UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

JACK D. PICKEL,

                                                                             No. 11-12-13262 TA

    Debtor.

## MEMORANDUM OPINION ON MARY BOEHM'S MOTION FOR DETERMINATION THAT AUTOMATIC STAY DOES NOT APPLY TO PENDING LITIGATION

### I.    INTRODUCTION

Movant Mary Boehm asks the Court for an order that the automatic stay of 11 U.S.C. § 362 does not apply to certain litigation pending against Alameda Virgin Islands Company, LLC, a Virgin Islands limited liability company ("AVIC") in the Superior Court of the Virgin Islands, Division of St. Croix, case no STX-2009-CV 545 (the "Virgin Islands Action"). This is a core matter. For the reasons set forth below, the Court denies the request, subject to the conditions set out below.

### II.    RELEVANT FACTS

The Court finds the following facts relevant to Boehm's Motion For Determination That Automatic Stay Does Not Apply To Pending Litigation, filed October 18, 2012, doc. 27 (the "Motion"):[1]

    1.    Debtor formed AVIC and at all times owned 100% of AVIC's membership interests.

    2.    On or about September 24, 2007, AVIC entered into an agreement (the "Agreement") with Boehm and her son Richard "Derryck" Boehm[2] to buy all of Boehm's right,

---

[1] The Court held a final hearing on the Motion and the debtor's objection thereto on February 13, 2013, at which seven exhibits were admitted into evidence and one witness (the Debtor) testified.

[2] Together referred to as "Boehm."

title, and interest, including all voting, management, and dividend rights, in and to 447.5 shares[3] of the common stock of Club Comanche, Inc., a Virgin Islands corporation ("Club Comanche"). The 447.5 shares and all of Boehm's related rights and interests are referred to herein as the "Shares."

3. There do not appear to be any original share certificates for the Shares.

4. Club Comanche owns, inter alia, a hotel and restaurant in St. Croix, Virgin Islands.

5. The purchase price for the Shares was $800,000, payable in installments. Debtor guaranteed payment of the purchase price.

6. AVIC paid $550,000 of the purchase price.

7. The final installment payment of $250,000 was due November 1, 2009.

8. AVIC did not pay the final installment on the due date.

9. On November 2, 2009, Boehm gave notice of default, with a cure period of 10 business days.

10. There is a bona fide dispute between the parties whether AVIC tendered the requisite $250,000 cure payment within the cure deadline, and/or whether Boehm wrongfully refused the cure tender.

11. Boehm purported to terminate the Agreement on or about November 17, 2009, and declare it "null and void." Based on these actions, Boehm takes the position that she now has full ownership of the Shares.

12. After signing the Agreement, AVIC and/or Debtor also purchased an additional 15% of the shares of Club Comanche from a third party.

---

[3] Mary Boehm owned 446.5 shares, while her son owned 1 share.

13. Debtor testified he invested about $2,000,000 into the Comanche Club hotel and restaurant after the Agreement was signed, in addition to the amounts paid by AVIC for the Shares.

14. Boehm filed a complaint for declaratory judgment and injunctive relief on November 25, 2009, commencing the Virgin Islands Action. In her complaint Boehm asks for, inter alia, a declaratory judgment that the Agreement was validly terminated and is "null and void."

15. AVIC filed an answer and counterclaim. After initial litigation over a temporary restraining order, the Virgin Islands Action has not been actively pursued by either party.

16. Debtor filed bankruptcy August 28, 2012.

17. On November 23, 2012, about five week after filing the Motion, Boehm filed an adversary proceeding in this bankruptcy case, commencing Adv. Pro. 12-01319 (the "Boehm Adversary Proceeding"). Boehm's complaint in the Boehm Adversary Proceeding seeks essentially the same relief she requested in the Virgin Islands Action.

18. A scheduling order was entered in the Boehm Adversary Proceeding, and the proceeding is on track for trial in July, 2013.

19. On or about February 4, 2013, Debtor took actions in his capacity as the sole member and manager of AVIC to dissolve AVIC, and transfer the Shares from AVIC to himself.

20. Boehm contends that the purported dissolution of AVIC was not done in accordance with Virgin Islands law, and is ineffective.

21. Boehm also contends that the transfer or purported transfer of the Shares was ineffective because AVIC had nothing to transfer; and/or contrary to Virgin Islands law because AVIC's debts were not paid in full prior to such transfer.

III.     DISCUSSION

A.     <u>Debtor Did Not Lose AVIC Ownership or Management Rights When He Filed Bankruptcy</u>.

Virgin Islands law provides that when a limited liability company member files bankruptcy, the member becomes "dissociated" from the company. 13 V.I. Code Ann. § 1601(7)(i). Upon dissociation, a member can no longer participate in the management and conduct of the company, and is no longer a member. 12 V.I. Code Ann. § 1603(b)(1). This provision, taken from the Uniform Limited Liability Company Act (1996), is in conflict with 11 U.S.C. § 542(c)(1), which provides:

> Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law-
>
>     (A) that restricts or conditions transfer of such interest by the debtor; or
>
>     (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Cases addressing the conflict have held that state law provisions such as 12 V.I. Code Ann. § 1603(b)(1) are pre-empted by 11 U.S.C. § 542(c)(1). *See Miller v. Bill and Carolyn Limited Partnership (In re Baldwin)*, 463 B.R. 142, at *2 (10th Cir. BAP 2006), affirmed, 593 F.3d 1155 (10th Cir. 2010) (citing *In re Ogden*, 314 F.3d 1190, 1197 (10th Cir. 2002), the Tenth Circuit BAP held that although state law determines the nature of debtor's partnership interest, federal law determines the extent to which that partnership interest become a part of the estate); *In re First Protection, Inc.,* 440 B.R. 821, 830 (9th Cir. BAP 2010) (§ 542(c)(1) overrides state limited liability company laws on effect of bankruptcy filing on membership interests and

rights); *In re Ryan Andrew Ellis,* 2011 WL 5147551, *3 (Bankr. S.D. Ind. 2011) (same); *Cantrell v. Dixie Mgmt. & Invest. (In re Dixie Mgmt. & Invest.)*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (same); *Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 678-79 (Bankr. E.D.N.C. 2008) (same); *Movitz v. Fiesta Investments, LLC (In re Ehmann)*, 319 B.R. 200, 204 (Bankr. D. Ariz. 2005) (right to dissolve limited liability company devolved to trustee upon bankruptcy filing, despite Arizona statute to the contrary); *Samson v. Prokopf (In re Smith)*, 185 B.R. 285, 291-92 (Bankr. S.D. Ill. 1995) (same).

Some courts have noted that such state law provisions make little sense in the case of single-member limited liability companies, because the statute would leave the company without a member or manager if their sole owner filed bankruptcy. *See In re Albright,* 291 B.R. 538, 540 (Bankr. D. Colo. 2003); *In re Modanlo*, 412 B.R. 715, 727 (Bankr. D. Maryland 2006), affirmed, 266 Fed. Appx. 272 (4th Cir. 2008). This is a cogent observation.

Based on the authorities cited above, the Court holds that Debtor's bankruptcy filing did not diminish Debtor's membership or management rights or interests in AVIC, and that Debtor continued as the sole member and manager of AVIC, with all rights and duties attendant thereto.

B. <u>AVIC's Post-Petition Transfer of the Shares Was Effective to the Extent of AVIC's Interest Therein</u>.

Shortly before the final hearing on Boehm's Motion, Debtor caused AVIC to dissolve, and also caused AVIC to transfer its interest in the Shares to Debtor. Boehm argues that AVIC had nothing to transfer because of the pre-petition termination of the Agreement. That is the crux of the dispute in the Boehm Adversary Proceeding and the Virgin Islands Action

In the alternative, Boehm argues that the transfer violated 13 V.I. Code Ann. § 1806, which provides:

-5-

> (a) In winding up a limited liability company's business, the assets of the company must be applied to discharge its obligations to creditors, including members who are creditors. Any surplus must be applied to pay in money the net amount distributable to members in accordance with their right to distributions under subsection (b) of this section.
>
> (b) Each member is entitled to a distribution upon the winding up of the limited liability company's business consisting of a return of all contributions which have not previously been returned and a distribution of any remainder in equal shares.

Boehm urges that the Shares transfer violated this statute because AVIC did not pay the $250,000 owed to her under the Agreement. Debtor counters that the Shares transfer was proper because Boehm is the only creditor of AVIC, and AVIC's claims and defenses against Boehm reduce her claim to $0.

The Court need not resolve the dispute now because the law is clear that, even if the transfer of Shares was done in violation of the statute, the transfer is not void. Instead, a wrongful transfer would give Boehm additional claims against AVIC and the Debtor. *See, e.g., In re Chadwick Farms Owners Ass'n. v. FHC LLC,* 166 Wash. 2d 178, 201, 207 P.3d 1251, 1262 (Wash. 2009) (LLC members could be personally liable to LLC creditors for improper winding up of the company); *New Horizons Supply Co-op v. Haack,* 224 Wis.2d 644, 590 N.W.2d 282 (Wis. App. 1999) (same); *Drayton Grain Processors v. NE Foods, Inc.*, 2007 WL 983825, *6 (D.N.D. 2007) (acknowledging potential claim against sole member of dissolved LLC for failing to provide for claims before distribution of LLC assets); *Washington v. Jadczak (In re Jadczak)*, 2011 WL 13612 (Bankr. E.D. Pa. 2011) (court acknowledges and reserves for trial creditor's claim against an LLC member for liquidating assets without paying off creditor).

One remedy available to creditors of an LLC whose assets have been improperly distributed to members may be a finding of that the transferred assets are held in trust for the creditors, and/or the imposition of a constructive trust. In *Engage with Clear Vision, LLC v.*

-6-

*Cameron (In re Cameron)*, 2011 WL 2118994, at *3 (Bankr. D. Utah 2011), for example, the bankruptcy court, quoting *BYU v. Tremco Consultants, Inc.*, 156 P.3d 782, 791 (Utah 2007), observed that under the "trust fund" doctrine, "the assets of a dissolved corporation become a trust fund against which the corporation's creditors have a claim." *See generally Am Jur Corporations* § 2419 (Trust Fund Doctrine); Fletcher-Cyc. § 7369, note 13 and accompanying text.

To similar effect is the theory that a transfer to the company members without paying all creditors is a fraudulent transfer recoverable under applicable fraudulent transfer law. Fletcher-Cyc. §7369, note 14 and accompanying text.

Thus, if AVIC retained ownership or other rights in the Shares but Boehm is correct that the transfer violated her rights as an AVIC creditor, she would retains all of her pre-transfer claims against AVIC and Debtor, and would gain additional claims against them both, including potential trust fund and fraudulent transfer claims. On the other hand, if Boehm is incorrect, and it turns out that she is not a creditor of AVIC, then the transfer of the Shares was both proper and effective. The Court does not decide the merits of the dispute between the parties.

    C.    <u>Debtor's Failure to Obtain Court Authority for the AVIC Transfer</u>.

It should also be noted that the transfer of the Shares may not have been properly authorized by the Court. *See* 11 U.S.C. §§ 1108 and 363(c)(1), which require court approval of transactions that are not in the ordinary course of Debtor's business. Here, it appears that the dissolution of AVIC and the actions taken to cause AVIC to transfer the Shares to Debtor were not in the ordinary course of Debtor's business, and may have required Court authority.

However, actions that are not in a debtor's ordinary course of business and are taken without Court authority are potentially voidable, rather than void. *See e.g. Sigmon v. Butner (In*

-7-
Case 12-13262-t11    Doc 99    Filed 02/25/13    Entered 02/25/13 17:24:20 Page 7 of 12

*re Johnson Bros. Truckers Inc.),* 9 Fed. Appx. 156, 164 (4th Cir. 2001) (unauthorized post-petition financing transaction was voidable under 11 U.S.C. § 549); *Darwin v. Beck (In re Fidelity Standard Mortg. Corp.),* 839 F.2d 1517, 1521 (11th Cir. 1988) (had a mortgage at issue been reassigned to a creditor without court approval, the reassignment would have been a voidable post-petition transfer under § 549); *Kendall v. Torres (In re Donpedro)*, 2004 WL 3187072, at *2-3 (Bankr. N.D. Cal. 2004) (discussing Ninth Circuit case law on the interplay of § 362 and § 549, and noting that post-petition transfers outside of the ordinary course of business, if not done in violation of § 362, are avoidable under § 549). The Shares transfer therefore was effective to bring the Shares into the estate (again assuming without deciding that AVIC had anything to transfer).

D. <u>In Light of the Shares Transfer, the Automatic Stay Applies to the Virgin Island Action</u>.

In general, the automatic stay does not apply to assets of a debtor's subsidiaries, even wholly-owned subsidiaries such as AVIC. *See, e.g., Kreisler v. Goldberg,* 478 F.3d 209, 214 (4th Cir. 2007) (automatic stay does not apply to assets of debtor's subsidiaries); *In re Calhoun*, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004) (same); *In re HSM Kennewick, L.P.,* 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006); *In re Aldape Telford Glazier, Inc.,* 410 B.R. 60, 65 (Bankr. D. Idaho 2009); *In re Brittain*, 435 B.R. 318, 321-22 (Bankr. D.S.D. 2010); *Murray v. Mares (In re Murray)*, 147 B.R. 688, 690 (Bankr. E.D. Va. 1992).

In this case, AVIC's Shares transfer to Debtor either transferred nothing (if Boehm validly terminated the Agreement in 2009, and if such termination did in fact render the sale null and void), or else transferred the Shares to Debtor. Since there is a bona fide dispute about the effectiveness of Boehm's attempted termination of the Agreement, and/or the results thereof, the

Court finds that the estate, post-transfer, has a sufficient interest in the Shares for the automatic stay to apply.

> 11 U.S.C. § 362(a)(3) "operates as a stay, applicable to all entities, of—
>
>> Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

There is case law that the automatic stay applies to property that is "arguably" property of the estate. *See, e.g., Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303-04 (5th Cir. 2005) (automatic stay protects property that is "arguably" property of the estate); *In re Levenstein,* 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007) (adopting the "arguable property" concept); *Taub v. Taub (In re Taub)*, 427 B.R. 208 (Bankr. E.D.N.Y. 2010), affirmed, 2011 WL 1322390 (E.D.N.Y. 2011) (quoting *Levenstein*, the court stated that "courts in this circuit have concluded that the automatic stay applies even where "the debtor's claimed interest in property may turn out to be groundless"); *Bohm v. Howard (In re Howard)*, 2010 Bankr. Lexis 5109, at *10 (Bankr. W.D. Pa. 2010) (citing *Chesnut* with approval); *In re Global Outreach, S.A.*, 2009 WL 1606769, at *8 (Bankr. D.N.J. 2009) (the court considered the concept of "arguable property" "instructive"). *See generally* 30-Jan Am. Bankr. Inst. J. 34 "To Infinity and Beyond: Exploring the Reach of the Automatic Stay." *Cf. Jahr v. Frank (In re Jahr),* 2012 WL 3205417, at *7 (9th Cir. BAP 2012) (distinguishing *Chesnut* but also criticizing the concept of "arguable property" as too expansive).

The Court is not prepared to adopt the "arguable property" standard regardless of how weak a debtor's argument might be. However, where, as here, the debtor has demonstrated a bona fide dispute[4] with a creditor regarding whether property is property of the estate, it seems reasonable to hold that the stay applies.

---

[4] The "bona fide dispute" test is used in several places in the Bankruptcy Code, *see e.g.* §§ 101(32), 303(b)(1), and 363(f).

E. <u>Other Considerations</u>.

The Debtor's eleventh-hour upstreaming of the Shares, without Court approval and with the obvious goal of obtaining the benefit of the automatic stay, is a questionable tactic. In most circumstances, the Court would not condone the practice, and the result reached in this case should not be read as judicial imprimatur for the ploy. The Court's decision in this case is based on the following considerations in addition to those set out above:

1. The Comanche Club hotel and restaurant are integral to Debtor's reorganization, so a decision about ownership of the Shares needs to be made as soon as practicable;

2. Boehm filed the Boehm Adversary Proceeding in this Court, and has not sought to dismiss it, indicating at least some willingness for this Court to decide the dispute between her and the Debtor;

3. The evidence before the Court is that AVIC had only one creditor, Boehm. Had there been multiple creditors, the outcome could well have been different;

4. The evidence before the Court is that the value of the Shares substantially exceeds the remaining debt to Boehm. Because of this, it appears Boehm's interest will be well protected regardless of the outcome of the litigation. If the result of a trial of the Boehm Adversary Proceeding is that Boehm validly terminated the Agreement pre-petition, and was able to declare the Agreement null and void, Boehm will be fully protected. If the result is that the termination was wholly ineffective and AVIC owes Boehm nothing, then Boehm will be no worse off. If the result is in between these two, and Boehm is owed money by AVIC and the Debtor, Boehm may have a trust-fund type claim against the Shares to secure her claim;

5. There was no allegation that the Comanche Club is not being properly managed or maintained, or is suffering a decline in value;

6. Debtor's investment of about $2,000,000 in the Comanche Club property, and Boehm's attempt to obtain the value of that entire investment from the Debtor, is a consideration;

7. The Court will condition continuation of the automatic stay on the Debtor not making any further transfers of the Shares without prior Court approval, after notice and a hearing. Furthermore, the Court will preserve any arguments or claims Boehm may have based on the Debtor's dissolution of AVIC and the transfer of the Shares. These arguments and claims may be made at the trial of the Boehm Adversary Proceeding;

8. The evidence before the Court is that the Debtor may have decided not to remove the Virgin Islands Action to this Court because Boehm filed the Boehm Adversary Proceeding. It would be somewhat of a sharp tactic for Boehm to allow the removal deadline to expire,[5] and then seek to dismiss[6] the Boehm Adversary Proceeding and litigate the dispute in the Virgin Islands.

9. Boehm did not pursue the Virgin Islands Action for nearly three years after she filed it.

In light of the foregoing, the Court believes that, on balance, AVIC's post-petition Shares transfer resulted in application of the automatic stay to the Virgin Islands Action. The Court believes it should try the Boehm Adversary Proceeding as soon as reasonably practicable. The

---

[5] The deadline was 90 days after the petition date, per Bankruptcy Rule 9027, or about November 28, 2012.

[6] Although Boehm's counsel indicated that no final decision had been made regarding dismissal of the Boehm Adversary Proceeding if the Court were to grant the Motion, dismissal is the only alternative that would make sense, given Boehm's decision to pursue the Motion.

-11-

Court wishes to emphasize again that it has reached no conclusion of any sort on the merits of the Boehm Adversary Proceeding or the Virgin Islands Action.

## IV. CONCLUSION

The Motion will be denied, for the reasons and subject to the conditions set forth above. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate order will be entered, and a status conference in the Boehm Adversary Proceeding will be scheduled in the near future.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: February 25, 2013.

Copies to:

Christopher M. Gatton
10400 Academy, NE, Suite 350
Albuquerque, NM 87111

Daniel J. Behles
P.O. 7459
Albuquerque, NM 87194